BRENDA L. GRAY,                    )
                                   )
        Plaintiff/Appellee,        )        Appeal No.
                                   )        01-A-01-9508-CV-00359
v.                                 )
                                   )        Sumner Circuit
STEPHEN D. GRAY,                   )        No. 12431-C
                                   )
        Defendant/Appellant.       )

FILED

March 6, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

AT GALLATIN, TENNESSEE


THE HONORABLE THOMAS GOODALL, JUDGE



JOE P. BINKLEY, SR.
First American Center
315 Deaderick Street Suite 2395
Nashville, Tennessee 37238

JOHN BELL WHITESELL
150 Second Avenue North, Suite 300
Nashville, Tennessee 37201
        ATTORNEYS FOR PLAINTIFF/APPELLEE


CAROL L. SOLOMAN
214 Second Avenue North
400 Washington Square
Nashville, Tennessee 37201

THOMAS F. BLOOM
500 Church Street
Fifth Floor
Nashville, Tennessee 37219
        ATTORNEYS FOR DEFENDANT/APPELLANT




AFFIRMED AND REMANDED

MEMORANDUM OPINION[1]

Following a marriage of approximately eight years, Wife filed a complaint for absolute divorce in November 1993. In her complaint, she alleged adultery, inappropriate marital conduct, and irreconcilable differences. Husband answered and filed a counter-complaint which alleged cruel and inhuman treatment, inappropriate marital conduct, and irreconcilable differences.

After the pre-trial conference in October 1994, the trial court declared the parties divorced pursuant to Tennessee Code Annotated section 36-4-120 and held that either party could present evidence of fault where relevant at the final hearing. On 13 March 1995, the trial court held the final hearing and heard the parties' arguments.

In its decree of 23 March 1995, the trial court divided the disputed items of separate and marital property. The trial court awarded Wife a Corvette automobile, a 1992 Cadillac automobile, and a Clayton-Marcus sofa. In addition, the court ordered Wife to assume responsibility for keeping proper insurance coverage on the automobiles, to assume all indebtedness on the automobiles, and to hold Husband harmless from any future payments on the automobiles. The trial court equally divided the net proceeds of $60,804.00 from the sale of the parties' marital home. The trial court ordered Husband to be responsible for and hold Wife harmless from all debts incurred by Husband. As to any remaining items of marital property, the trial court instructed the parties to submit their proposed division for its consideration.

---

[1]Court of Appeals Rule 10(b):
The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

In a supplemental order entered on 28 March 1995, the court divided the remaining marital property. The court also awarded Wife $10,755.00 for attorney's fees and $10,000.00 alimony in solido as further distributions of the marital property.

Husband filed a notice of appeal as to that portion of the decree distributing the marital property.

The parties' marriage lasted for approximately eight years. At the time of the divorce hearing, Wife was 44 years old and Husband was 37 years old. There were no children born as a result of the marriage.

At the time of the parties' marriage in 1986, Wife worked at Cummings Sign Company. She worked there until she was "laid off" on 30 September 1990. After losing her job, she was unable to find suitable work in the job market. For the next three years, she helped Husband in every aspect of his mobile home hauling business. Her responsibilities included escorting mobile homes, keeping the company books, and balancing the checkbooks. She also mowed grass, picked up parts, and did anything else that needed to be done. At trial, Husband admitted that Wife's work, which was mostly uncompensated, saved money for the company. In addition to working in the business, Wife also maintained the home and did everything necessary to keep the house going and Husband comfortable.

During the parties' marriage, Husband acquired vehicles, equipment, and assets used in the business. He also acquired race cars and related racing tools and equipment. Wife valued all the vehicles, equipment, and other assets used in the business as well as the race cars and related racing tools and equipment acquired and accumulated during the marriage at $143,000.00. Wife asked the

3

court to award her the 1972 Corvette automobile which she testified Husband had given her as a gift during the marriage. The parties agreed that the Corvette's value was approximately $7,500.00.

Shortly after their marriage, the parties purchased a home for $160,000.00. Wife initially paid $26,000.00 from the sale of her pre-marriage home as a down payment for the marital home. Husband's testimony was that he initially paid $7,000.00 or $8,000.00 down on the marital home and that he later added improvements. Even though Wife's initial investment of pre-marital assets into the marital home was approximately three times that of Husband's, Wife agreed to split the net proceeds from the sale of the marital home equally with Husband.

The parties had only one joint debt which was on the Cadillac automobile. Husband, however, argued that both of the parties were responsible for a VISA credit card debt of some $4,000.00. He admitted that the VISA account was solely in his name and that the Wife had never used the VISA card. Nevertheless, he asked the court to split the indebtedness between the parties because he claimed to have used the card to pay off "household stuff" and to make a house payment on one occasion. Husband was unable to substantiate these claims.

It was Wife's testimony that the VISA card debt belonged solely to Husband. She explained that Husband had used his credit card exclusively to make purchases for himself. She also testified regarding his purchase of a race motor using a $4,000.00 credit card cash advance. The trial court held that Husband was responsible for and would pay the VISA credit card debt.

During the marriage, the parties owned two certificates of deposit each with a value of $10,000.00, not including the amount

4

of interest accrued during the marriage. Husband cashed the certificates in March 1994 even though they were the joint property of the parties. Wife never ascertained what Husband did with the proceeds of the certificates of deposit; however, at the hearing, it was shown that Husband had paid $20,500.00 as a down payment toward the purchase of a house in January 1995.

Husband's own proof of his income contradicted his testimony regarding the source of the down payment. He testified that he received the $20,500.00, which he used for the down payment on the house, from Luv Homes for contract labor he had performed. In that same hearing, however, he testified that he was destitute and introduced an income and expense statement to show that he had an income of only $25,000.00 before taxes in 1994. The irony of this testimony lies in the fact that less than one month after Husband's destitute year ended, he came up with a down payment of $20,500.00, 80% of his 1994 before tax income, with which to purchase a new house.

Husband's explanation for how he spent the $20,000.00 in proceeds from the certificates of deposit was also suspect. He testified that he spent the money on household bills, company expenses, and to catch up on house payments "at the end." The proof showed, however, that Husband's explanation was clearly erroneous. The marital home was sold in February 1993. At the closing, three months of back payments on the house note and back taxes were deducted from the sale proceeds. Moreover, Husband did not cash the certificates of deposit until more than a year after the sale of the marital home.

Husband's issue is whether the trial court properly awarded alimony in solido and attorney's fees to Wife as further distributions of the marital property.

5

We review the findings of the trial court de novo upon the record with a presumption of correctness as to the trial judge's findings unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

In this case, the evidence does not preponderate against the trial court's findings. We are of the opinion, after reviewing this record, that the preponderance of the evidence fully supports the findings of the trial court.

Therefore, we affirm the judgment of the trial court and remand the case to the trial court for any further necessary proceedings. Costs on appeal are taxed to the appellant, Stephen D. Gray.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE

6